Argued and submitted March 27, affirmed June 21, 1995

In the Matter of the Compensation of
Susan L. Jones, Claimant.

Susan L. JONES,
*Petitioner,*

*v.*

PRECISION CASTPARTS,
*Respondent.*

(WCB 93-02083; CA A83817)

897 P2d 333

Kevin Keaney argued the cause for petitioner. With him on the brief was Pozzi Wilson Atchison.

Deborah L. Sather argued the cause for respondent. With her on the brief were Tracy J. White and Stoel Rives Boley Jones & Grey.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

Claimant seeks review of an order of the Workers' Compensation Board holding that her claim was not prematurely closed. We affirm the Board, because its findings are supported by substantial evidence.

Claimant injured her neck at work in October 1990. Her claim for acute cervical strain was accepted by employer. Claimant underwent surgery, including a three level diskectomy and fusion at C5-6, C6-7, and C7-T1, performed by Dr. Misko, her treating physician. In 1991, claimant began seeing Dr. Irvine for shoulder pain related to the cervical strain. In September 1991, Misko found that two of the levels on which surgery had been performed, C6-7 and C7-T1, had failed to completely fuse. To try to save the fusion, Misko prescribed an electrical collar for claimant to wear. She wore the collar for about six months. In March 1992, after reviewing claimant's x-rays, Misko found that the fusion had healed and that claimant no longer needed to wear the collar. He scheduled claimant for a follow-up visit in three months. On June 15, Misko found claimant further improved, but with some continued left shoulder pain, for which Irvine had prescribed physical therapy. On June 24, 1994, Misko reported that although the fusion was not yet solid at C5-6 and C7-T1, there was no motion at those levels and he referred claimant to Dr. Snodgrass for a closing examination. Snodgrass performed a closing examination on June 25, 1992, and although claimant continued to complain of left shoulder pain, no further active treatment was recommended.

On July 31, 1992, relying on Misko's statement, Snodgrass reported that, because the fusion was not yet solid, claimant was not medically stationary. On August 3, 1992, Misko reported that, although the fusion was not yet solid, it would continue to solidify, and because there was no significant motion at those levels, claimant was medically stationary.[1] Irvine agreed with Misko and reported that claimant's shoulder was medically stationary. On September 30, 1992, the claim was closed with a determination that claimant was

---

[1] ORS 656.005(17) provides:

" 'Medically stationary' means that no further material improvement would reasonably be expected from medical treatment, or the passage of time."

medically stationary and an award of 34 percent unscheduled permanent partial disability and 7 percent loss of use of the left arm.

After claim closure, on October 23, 1992, claimant returned to Misko with complaints of shoulder discomfort, which Misko attributed to "slight motion" at C5-6 that claimant "still" has. He predicted that the fusion would become solid naturally within two years, but gave claimant the option of surgical re-fusion. In November 1992, Misko reported that claimant's condition had worsened and that the top level of her fusion was not solid. He recommended surgery to repair the fusion.

Claimant requested reconsideration of the notice of closure, raising issues relating to the date she was declared medically stationary and her entitlement to benefits for permanent and total disability. Misko reiterated his opinion that claimant had become medically stationary on June 24, 1992, but that her condition had worsened on October 23, 1992. He expressly rejected the suggestion that his earlier opinion as to claimant's medically stationary date had been premature.

In February 1993, in an order on reconsideration, the Appellate Unit rescinded the notice of closure, based on the October 23, 1992, medical report of Misko stating that there was "slight motion" and recommending further surgery. The referee reinstated the notice of closure, saying:

"There is no medical evidence in this record prior to claim closure that either the passage of time (in this case apparently two years for the fusion to solidify) or further medical treatment (surgery) was expected to produce material improvement. Dr. Snodgrass merely stated the conclusion that claimant was not medically stationary because her fusion was not solid, but did not indicate that solidification would cause material improvement. Dr. Misko is claimant's primary treating physician, and he reaffirmed that claimant was medically stationary in June, 1992 even after being provided with the statutory definition of medically stationary * * *. The fact that Dr. Misko found claimant worse subsequent to September 30, 1992, is immaterial in determining her medically stationary status on September 30, 1992. Therefore the claim was not prematurely closed."

The Board affirmed the referee.

■ Claimant's contention on review is that, because the fusion had not yet solidified on the closing date and it was known at the time that it would continue to solidify, claimant's medical condition was expected to improve with the passage of time and she was not medically stationary. That view is supported, she contends, by the October 23, 1992, report of Misko, in which he noted that claimant's fusion "still" was not solid and would take two years to solidify, and offered surgery to resolve claimant's continuing pain. The suggestion from that report, claimant contends, is that claimant's fusion had never been solid, and because claimant's pain would resolve only when her fusion had solidified, she would not be medically stationary until that time.

■ Misko's opinion, as repeatedly expressed in his reports, was that despite the fact that claimant's fusion had not "technically" solidified as of June 1992, there was no significant motion at that time and she was medically stationary. At the time of claim closure, on September 30, 1992, those reports supported closure of the claim. Claimant's reliance on Misko's October 23 report is misplaced. In the first place, we disagree that the report suggests that claimant had not been medically stationary in June 1992. Misko's notation that claimant "still has slight motion" must be read in the light of his subsequent view that the motion reflected a recent exacerbation of claimant's condition. If anything, Misko's report may support a claim for an aggravation of her injury. However, the subsequent, post-closure changes in claimant's condition do not make an earlier closure premature. *Alvarez v. GAB Business Services*, 72 Or App 524, 527, 696 P2d 1131 (1985). We conclude that substantial evidence supports the Board's determination that claimant was medically stationary on June 24, 1992, and that the claim was not prematurely closed.

Affirmed.